In the Matter of COASTAL POWER PRODUCTION COMPANY et al., Respondents, v NEW YORK STATE PUBLIC SERVICE COMMISSION et al., Appellants.

Third Department, February 1, 1990

236

### APPEARANCES OF COUNSEL

*William J. Cowan* (*Lawrence G. Malone* of counsel), for appellant.

*LeBoeuf, Lamb, Leiby & MacRae* (*Thomas G. Rohback* and *Michael W. Murphy* of counsel), for appellant.

*Nixon, Hargrave, Devans & Doyle* (*Robert L. Daileader* and *Jeanne M. Bennett* of counsel), and *Carl E. Wasmuth, Jr.*, for respondents.

## OPINION OF THE COURT

KANE, J.

In December 1987, respondent Niagara Mohawk Power Corporation (hereinafter Niagara Mohawk) executed a contract with an independent power producer, Turner Power Group, Inc. (hereinafter Turner), for the sale of electricity from the soon-to-be-developed Fulton cogeneration project (hereinafter the Fulton project). The contract provided for Niagara Mohawk to pay Turner at a variable rate based on the greater of Niagara Mohawk's avoided costs or the minimum rate required by State law. Avoided costs were those expenses Niagara Mohawk would incur to generate the power itself had it not purchased it from Turner. The minimum rate required by State law was 6 cents per kilowatt hour pursuant to Public Service Law § 66-c (1) (a). The variable rate of payment was 1 of 3 options offered by respondent Public Service Commission (hereinafter the PSC) through an "interim policy" and pursuant to its statutory authority to require long-term contracts between utilities and independent power producers which are "just and economically reasonable to the [utility's] ratepayers [and] non-discriminatory to [independent power producers]" (Public Service Law § 66-c [1] [a]).

On April 13, 1988, the PSC accepted the contract for filing and, on April 20, 1988, approved the contract contingent upon, inter alia, Turner posting a refundable deposit of $15 per kilowatt and subject to conditions to be established later. On April 14, 1988, the Federal Energy Regulatory Commission (hereinafter FERC) issued an order finding that States could no longer impose rates exceeding avoided costs and invalidating New York's statutory minimum rate of 6 cents per kilowatt hour (Orange & Rockland Utils, 43 Fed Energy Reg Commn Rep [CCH] ¶ 61,067) (hereinafter the FERC order).

On May 25, 1988, the PSC issued an order which, inter alia, reiterated its position on deposits and directed utilities, such as Niagara Mohawk, to require independent power producers involved in cogeneration project development to post a $15 per kilowatt deposit in order to "discourage" "speculative projects" and ensure that projects became operational. The deposit requirement was made effective immediately on an emergency basis and the PSC invited interested parties to comment on the order before its adoption as a permanent rule. Several power project developers subsequently voiced concerns that the FERC order invalidating the statutory minimum rule

would render their projects economically unfeasible and expose them to forfeiture of deposits for failure to become fully operational.

Thereafter, petitioners Coastal Power Production Company and ANR Venture Fulton Company, who as partners of petitioner Fulton Cogeneration Associates develop alternate energy projects, acquired the interests of Turner in the Fulton project and assumed the obligations of Turner under its power contract with Niagara Mohawk. On November 9, 1988, petitioners requested from the PSC either a stay of the deposit requirement or a declaratory order relieving petitioners from deposit forfeiture in the event that petitioners terminate development of the Fulton project due to the FERC order. On November 10, 1988, the PSC issued an order finding, *inter alia,* that a deposit requirement imposed on project developers was valid and that *force majeure* events, including the FERC order, would not excuse developers from posting deposits or from fulfilling their power contract requirements.

Petitioners then commenced this CPLR article 78 proceeding requesting, *inter alia,* a judgment annulling so much of the PSC's May 25, 1988 and November 10, 1988 orders as would require forfeiture of deposits made in connection with its power contract with Niagara Mohawk in the event that the Fulton project is terminated due to a determination making the statutory minimum rate unavailable. Supreme Court granted the petition and this appeal followed.

■ We reverse. Supreme Court erroneously based its decision on a finding that "a key element of * * * petitioners' entry into the agreement was the [statutory minimum rate]" and concluded that it was arbitrary, capricious and unreasonable for the PSC to require deposit forfeiture "because of the reduction in the minimum price of energy *previously* tendered to them" (emphasis supplied). This implies that petitioners were unaware of the FERC order, or its possible effect on statutory rates and deposit forfeiture, prior to its purchase of Turner's power contract. The record indicates that petitioners were aware of the FERC order and its possible implications for required deposits before they entered into the power agreement with Niagara Mohawk. At that time, the PSC had already issued its May 25, 1988 order requiring a deposit subject to forfeiture and FERC had already decided that the statutory minimum rate was invalid. Therefore, petitioners, aware at the time they purchased the contract that the FERC order could adversely affect their rate of payment, could not

have relied on the statutory minimum rate as a basis for entering into that contract such that the PSC's deposit requirements constitute an arbitrary or capricious injection of terms after the fact.

■ We are equally unpersuaded by the remaining contentions raised by the petition but not specifically addressed by Supreme Court. Petitioners contend that the PSC contravened the purpose of Public Service Law § 66-c when it required strict forfeiture of deposits should petitioners fail to complete the Fulton project due to the FERC order rendering it economically unfeasible. In their brief, petitioners argue that the PSC's position on deposit forfeiture serves as a deterrent to alternative energy development in the State. The legislative purpose behind such development, however, is "to conserve our finite and expensive energy resources and to provide for their most efficient utilization" (Public Service Law § 66-c [1]; see, Matter of Long Lake Energy Corp. v Public Serv. Commn., 148 AD2d 84, 86, lv denied 75 NY2d 701). The reliability of those projects from whom a utility agrees to purchase power is crucial to the "efficient utilization" of energy and, therefore, the PSC's use of deposits to "quickly and fairly separare projects that will operate from those that will not" effectuates the purpose of the statute. Petitioners have failed to support their contention that the PSC is "not protecting the ratepayer against future capacity shortages, but rather depriving them of needed capacity, as potential developers are discouraged from entering the market". Allowing petitioners to recover their deposit prior to completing the Fulton project, on the premise that the FERC order renders it economically unfeasible, would defeat the purpose of the deposit and allow petitioners to avoid performance under the contract, without deposit forfeiture, due to a risk inherent in the contract at the time petitioners purchased it from Turner.

■ Equally without merit is petitioners' contention that the PSC's different deposit requirements, based on the rate utilities will pay a project for its power, are arbitrary and capricious. The PSC's imposition of more stringent deposit requirements on contracts potentially affected by the FERC order is designed to increase their reliability and, as such, is reasonable.

Finally, we note that petitioners seek relief from only that portion of the PSC's orders that would require deposit forfeiture in the event that petitioners fail to become operational because of the unavailability of the statutory minimum rate.

In doing so, we voice concern over the propriety of the PSC's orders inasmuch as they purport to require deposit forfeiture in the event a project fails to become operational due to *any force majeure.* In this instance, "[t]he fact that a contract becomes increasingly difficult and expensive to perform because of a law enacted after its execution does not excuse performance" (22 NY Jur 2d, Contracts, § 355, at 245; *see, Ogdensburg Urban Renewal Agency v Moroney,* 42 AD2d 639, 640; *see also, 407 E. 61st Garage v Savoy Fifth Ave. Corp.,* 23 NY2d 275, 281) and may subject a party to forfeiture of deposits duly collected under the contract. However, we find that the all encompassing rejection of any and all *force majeure,* including those making performance literally impossible due to inevitable accident, may strike an imbalance between the PSC's legislative mandates to assure that a power contract's terms are *both* "just and economically reasonable to the corporation's ratepayers" *and* "non-discriminatory" to alternative energy project development (Public Service Law § 66-c [1] [a]). However, that issue, not before us now, is for another day.

MAHONEY P. J., CASEY, WEISS and HARVEY, JJ., concur.

Judgment reversed, on the law, without costs, determinations confirmed and petition dismissed.